IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

PERRY DEMON PARRISH, #133200,       )
                                    )
            Petitioner,             )
                                    )
      v.                            )       CIVIL NO. 2:16-cv-292-WHA
                                    )              [WO]
CARTER DAVENPORT, *et al.*,         )
                                    )
            Respondents.            )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Petitioner Perry Demon Parrish, an inmate of the Alabama Department of Corrections, filed this petition for habeas corpus relief pursuant to 28 U.S.C. § 2254, challenging his convictions and sentences in the Circuit Court for Covington County, Alabama, on seven counts of first-degree sodomy, six counts of first-degree sexual abuse, and four counts of sexual abuse of a child under 12 years of age. Docs. 1 & 10. For the following reasons, the court recommends that the petition be denied and the case dismissed.

## I. STATE PROCEEDINGS

After the jury found Parrish guilty of the charges, the state circuit court sentenced him to life in prison as a habitual offender for each of the convictions. The court ordered all of the sodomy counts to be served concurrently with one another, all the sexual abuse counts to be served concurrently with one another, and all the sexual abuse with a child counts to be served concurrently with one another. Docs. 18-6 at 13–14 & 18-20 at 28–30.

## A.      Direct Appeal

Parrish appealed, raising two primary issues. First, he argued that the circuit court's curative instructions could not repair the prejudice he suffered when the jury repeatedly heard

testimony about his prior bad acts in violation of the court's order *in limine* and Alabama Rule of Evidence 404(b). Doc. 18-7 at 15–23. Second, he argued that "the prosecutor's professed compliance with the court's order to not mention Perry Parrish's prior bad acts is well short of compliance and is the source of irreparable harm" to him. Doc. 18-7 at 23–26.

The Alabama Court of Criminal Appeals held that Parrish failed to preserve for appellate review four of the six challenges to admission of testimony relating to his prior bad acts. *Parrish v. State*, No. CR–09–1101 (Ala. Crim. App. Apr. 15, 2011), Doc. 18–9 at 3. Under the law in Alabama, it explained that

> [t]o preserve an issue for appellate review, the issue must be timely raised and specifically presented to the trial court and an adverse ruling obtained. Although Parrish filed a motion for a new trial in which he challenged the testimony of the witnesses that he now challenges on appeal, Parrish's motion for new trial was not timely and did not serve to preserve his claims on appeal. The grounds urged for a new trial must ordinarily be preserved at trial by timely and sufficient objections. [A] motion for a new trial . . . is not sufficient to preserve the issue where no timely objection was made at the time the evidence was offered and admitted. Because Parrish did not object on four of the six occasions when witnesses testified regarding his prior bad acts, he failed to preserve for appellate review his challenges to those instances of alleged error.

*Id.* (citations and internal quotations omitted).

As for the two instances Parrish did preserve,[1] the Court of Criminal Appeals held that the circuit court did not error in denying Parrish's motion for a mistrial. *Id.* at 7. Under applicable state law, a trial court has discretion to deny a motion for mistrial, "and the court's ruling on a motion for a mistrial will not be overturned absent a manifest abuse of that discretion." *Id.* (quoting

---

[1] In the first preserved instance, the victim's mother testified for the prosecution about her conversation with the victim when the victim told her about the abuse: "She said, 'Mama'—exactly what she told me. She said 'Mama, do you remember what Perry got in trouble for?' And I said, 'Yes.' She said, 'He's done it again.' I said, 'To who?' She said, 'To me.' And I said, 'Oh my, God.' Then I went into shock. I knew it was true." Docs. 18-4 at 37 & 18-9 at 4–5. In the second instance, Richard Barbarow testified on redirect examination that his friendship with Parrish was unaffected by allegations that Parrish's brother molested Barbarow's step-daughter "[b]ecause [Parrish] was in jail then." Docs. 18-4 at 164–65 & 18-9 at 6.

*Peoples v. State*, 951 So. 2d 755, 762 (Ala. Crim. App. 2006). The Court of Criminal Appeals reasoned that "[a]ny error in the admission of the improper testimony was promptly eradicated by the circuit court's curative instructions." *Id.* at 7. Furthermore, it held, the circuit court polled the jurors to determine if they could follow the court's instructions to disregard statements. *Id*. at 8. Finding no evidence that the jury could not follow the court's instructions, the Court of Criminal Appeals presumed, as required by Alabama law, that the jury followed the court's instructions. *Id.* (citations omitted).

The Court of Criminal Appeals also held that the circuit court did not abuse its discretion in denying Parrish's motion for a new trial under Alabama state law. *Id.* at 8 (citing, *inter alia*, *Knight v. State*, 710 So. 2d 511, 513 (Ala. Crim. App. 1997)). It held that "the record indicate[d] that the prosecutor did not intentionally elicit testimony from the witnesses regarding Parrish's prior criminal conduct." *Id.* at 8–9 (citing *Ex parte Sparks*, 730 So. 2d 113 (Ala. 1998)).

In his second primary issue for appeal, Parrish questioned the prosecutor's diligence in instructing witnesses not to speak of the prior bad acts, particularly because the episodes recurred during trial. Doc. 18-7 at 23–26. The Court of Criminal Appeals held that Parrish raised the issue for the first time on appeal and therefore failed to preserve the issue for appeal under Alabama law. Doc. 18-9 at 9 (citing, *inter alia*, *Ex parte Coulliette*, 857 So. 2d 793, 794 (Ala. 2003)). The Court of Criminal Appeals further notes that, even if preserved, the argument was "disingenuous, at best." *Id.* It pointed out that Parrish made a motion before trial to exclude evidence of his prior convictions for burglary, grand larceny, and sexual abuse. The prosecutor said he did not intend to elicit testimony about these acts and instructed his witnesses not to mention Parrish's criminal history. *Id.* The Court of Criminal Appeals further observed that defense counsel at trial said the

prosecutor "tried a very clean case" and several of the prosecutor's witnesses "inadvertently said some things because they are not professionals, and they don't understand where that line is." *Id.*

The Court of Criminal Appeals denied Parrish's application for rehearing. Doc. 18-10. The Alabama Supreme Court denied further review. A certificate of judgment issued on August 5, 2011. Docs. 18-11 & 18-12.

## B.    Rule 32 Proceedings

Parrish sought post-conviction relief under Alabama Rule of Criminal Procedure 32. Doc. 18-13 at 10–24. The circuit court summarily dismissed Parrish's claims of prosecutorial misconduct and newly discovered evidence. Doc. 18-13 at 36–37. Parrish also argued his counsel provided ineffective assistance by failing to object to the admission of prior bad acts evidence on multiple occasions. After an evidentiary hearing on the remaining claim of constitutionally ineffective assistance of counsel, the circuit court dismissed it. Docs. 18-13 at 65–76 & 18-14.

Parrish appealed only the prosecutorial misconduct and ineffective assistance of counsel claims. Doc. 18-18 at 6. On the prosecutorial misconduct claim, the Court of Criminal Appeals observed that, before the circuit court, Parrish "failed to cite any authority except a miscited reference to Rule 8.4 of the Alabama Rules of Professional Conduct." Doc. 18-15 at 8. It further observed Parrish simply quoted isolated instances of alleged prosecutorial misconduct from the trial record without placing the testimony in context or arguing why the selections constituted misconduct. Doc. 18-15 at 8. It stated that, "[a]lthough not a basis for the circuit court's dismissal, a simple review of Parrish's claims of prosecutorial misconduct . . . convinces this court that he failed to meet his burden to plead the full factual basis for his claim." Doc. 18-15 at 9 (citing, *inter alia*, Ala. R. Crim. P. 32.3 & 32.6(b)).[2] On the various ineffective assistance of counsel claims

---

[2] Rule 32.6(b) provides: "Each claim in the [Rule 32] petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds.

brought under the Sixth Amendment to the federal Constitution, the Court of Criminal Appeals held the circuit court's findings were supported by the record from the evidentiary hearing. Doc. 18-15 at 11. It observed that counsel could have objected to each instance of alleged improper testimony, but counsel made reasonable, strategic choices not to overemphasize before the jury some instances of Parrish's prior bad acts. Doc. 18-15 at 11. It affirmed the circuit court's ruling that Parrish failed to show that his counsel was constitutionally ineffective. Doc. 18-15 at 11.

Parrish petitioned for a writ of certiorari, which the Alabama Supreme Court denied. Judgment issued on March 11, 2016. Docs. 18-16 & 18-17.

## II. HABEAS PETITION AND THE PARTIES' ARGUMENTS

Parrish raises three[3] principal claims for § 2254 relief. Docs. 1 & 10. First, he seeks relief based on the prejudicial effect on the jury of the prior bad acts evidence. Doc. 1 at 6–8. Second, he argues that the prosecutor engaged in misconduct. Doc. 1 at 8–10. Third, he argues that he received ineffective assistance of counsel in violation of the state constitution and the Fifth Amendment to the United States Constitution. Doc. 1 at 10–12.

Respondents admit that Parrish's petition is timely. Doc. 15 at 8. In opposition to the substance of his claims, they first argue that Parrish cannot obtain federal review of four of the six claimed erroneous admissions of evidence because he defaulted them on direct appeal in state court pursuant to an adequate and independent state procedural rule. Doc. 15 at 11–12. Respondents further argue that on direct appeal Parrish failed to preserve under state rules his claim that the prosecutor was not diligent in preventing state witnesses from testifying about his

---

A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings." Ala. R. Crim. P. 32.6(b).

[3] Respondents state that there are four issues in Parrish's petition: (1) curative instructions did not remove prejudice from admission of Parrish's prior bad acts, (2) the prosecutor's response to the order not to mention Parrish's prior bad acts was well short of compliance and caused him irreparable harm, (3) prosecutorial misconduct, and (4) ineffective assistance of counsel. Doc. 15 at 7.

prior criminal conduct, and the issue is therefore defaulted for purposes of habeas review. Doc. 15 at 12–14. Respondents argue the state court's alternative ruling on the merits of the prosecutorial misconduct claim did not waive its reliance on the procedural default reasoning. Doc. 15 at 14. Respondents argue Parrish cannot show cause and prejudice for the default of his claims or that a fundamental miscarriage of justice would result if this court does not review his procedurally defaulted claims. Doc. 15 at 14–16. Second, Respondents argue that Parrish's two preserved claims addressed on direct appeal regarding the admission of prejudicial testimony, as well as his claim regarding prosecutorial misconduct, were raised in state court as only state-law claims and not as federal claims, and therefore this court cannot review them. Doc. 15 at 16–19. Finally, Respondents argue that the state-court determination of Parrish's ineffective assistance of trial counsel claims was not contrary to, or an unreasonable application of, clearly established federal law. Doc. 15 at 20–24.

This court entered an order giving Parrish an opportunity to respond to the answer, and advising Parrish of the constraints that 28 U.S.C. § 2254(d) places on federal courts to grant relief, including procedural default of federal claims, as well as the ways to overcome default. Doc. 17. Parrish responded, but he did not address the procedural default arguments. Doc. 20. He did not address the argument that he raised only state-law claims on direct appeal. Parrish instead reiterated his arguments that the curative instructions were insufficient;[4] that the prosecutor's acts fell well short of compliance with the order not to mention his prior bad acts, and he suffered

---

[4] In his reply, Parrish alleges that there were five instances of curative instructions, but only three were caused by the prosecutor. Doc. 20 at 3. Parrish lists these three as occurring in the trial transcript at pages 128, 192–93, and 333–34. Doc. 20 at 3–4; *see also* Doc. 18-3 at 176; Doc. 18-4 at 40–41 & 181–82. The Court of Criminal Appeals addressed the merits of only the last two instances. Doc. 18–9 at 4–9.

irreparable prejudice from this testimony; that the prosecutor engaged in misconduct; and that his counsel provided ineffective assistance.[5] Doc. 20.

The court has reviewed the § 2254 petition, the state-court record, the parties' arguments, and applicable federal law. The court concludes that no evidentiary hearing is required, and the petition is due to be denied in accordance with the provisions of Rule 8(a) of the Rules Governing Section 2254 Cases in United States District Courts.

### III. DISCUSSION

**A.     Exhaustion and Default Principles**

The procedural default doctrine is closely related to the exhaustion requirement in § 2254 cases. To preserve a federal claim for habeas review, principles of exhaustion require a petitioner to present the federal claim and facts supporting it to the state's highest court, either on direct appeal or on collateral appeal through post-conviction proceedings. *See Pruitt v. Jones*, 348 F.3d 1355, 1358–59 (11th Cir. 2003) (holding that exhaustion principles apply to state post-conviction proceedings as well as direct appeal). The petitioner must present the claim in state court as a federal claim, not simply as a state-law claim that is "somewhat similar" to a federal claim. *See Duncan v. Houston*, 513 U.S. 364, 366 (1995) (per curiam) (holding that petitioner challenged admission of evidence under state law, therefore he "did not apprise the state court of his claim that the evidentiary ruling of which he complained was not only a violation of state law, but denied him the due process of law guaranteed by the Fourteenth Amendment"). A petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including review by the state's court of

---

[5] In his reply, Parrish identifies five instances when trial counsel failed to prevent the jury from hearing evidence of Parrish's prior bad acts. Parrish lists these five as occurring in the trial transcript at pages 154–55, 157, 158–59, 161–62, and 176. Doc. 20 at 7–9.

last resort, even if review in that court is discretionary. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Pruitt*, 348 F.3d at 1359. In Alabama, this requires filing an appeal to the Court of Criminal Appeals, an application for rehearing, and a petition for discretionary review with the Alabama Supreme Court. *See Pruitt*, 348 F.3d at 1359 (describing Alabama procedures for discretionary review); *Smith v. Jones*, 256 F.3d 1135, 1140 (11th Cir. 2001) ("Alabama's discretionary direct review procedures bring Alabama prisoner habeas petitions within the scope of the *Boerckel* rule."). Doing so gives the state courts the first opportunity to apply controlling law to their case and the petitioner's claim. *See Duncan v. Walker*, 533 U.S. 167, 179 (2001) ("The exhaustion rule promotes comity in that 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.'") (citations omitted).

Federal habeas review also is unavailable if the state-court decision was made on a state-law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). The court "presume[s] that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" *Id.* at 735 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040–41 (1983)). Otherwise, however, the court makes no such presumption. *Id.* at 739.

If the last reasoned opinion "fairly appear[s] to rest primarily upon federal law," then the court presumes the subsequent order relies on federal law. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (citation omitted). Similarly, if the last reasoned order invoked procedural default, then the court "presume[s] that a later decision rejecting the claim did not silently disregard that bar and

consider the merits." *Id.* The court presumes a subsequent, unexplained state-court decision adopted the reasoning of the prior decision, but the state may rebut this presumption. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

If a state court plainly holds that a claim is barred under an adequate and independent state-court ground, then the federal courts may not review the claim even if the state court alternatively rejected the federal claim on the merits. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (holding that "a state court need not fear reaching the merits of a federal claim in an *alternative* holding" when the adequate and independent state ground "is a sufficient basis for the state court's judgment"). To rely on a state court's procedural bar of a federal claim, three conditions must be met: (1) the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim, (2) the state-court decision must rest entirely on state-law grounds and not be intertwined with an interpretation of federal law, and (3) the state procedural rule must be firmly established and regularly followed at the time it was applied. *Ward v. Hall*, 592 F.3d 1144, 1156–57 (11th Cir. 2010) (citations omitted); *see Ford v. Georgia*, 498 U.S. 411, 423–24 (1991) (holding that state procedural default is not an "independent and adequate state ground" barring subsequent federal review unless the state rule was "'firmly established and regularly followed'" at the time it was applied). To be adequate, the state rule "must not be applied in an arbitrary or unprecedented fashion. . . . [it] cannot be 'manifestly unfair' in its treatment of the petitioner's federal constitutional claim to be considered adequate for the purposes of the procedural default doctrine." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) (citation omitted).

If a petitioner did not present a claim to the highest state court but would now be unable to present the claim in state court because of a state procedural rule—for example, because it would

run afoul of requirements on time limits for filing—the petitioner "meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him." *Coleman*, 501 U.S. at 732. But the petitioner nevertheless has "procedurally defaulted" the federal claim under an adequate and independent state rule—that is, the timely filing requirements. *See id.* at 750. Federal claims which have never been presented to a state court or claims which were not exhausted properly in the state courts are procedurally defaulted if presentation of the claims in state court would be barred by firmly established and regularly followed state procedural rules. *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) (holding that where state-court remedies are no longer available because petitioner failed to present claim on direct appeal or in a state post-conviction action, petitioner has procedurally defaulted claims and is generally barred from asserting claims in a federal habeas proceeding); *Coleman*, 501 U.S. at 735 n.1 ("[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[,] . . . there is a procedural default for purposes of federal habeas.") (citations omitted); *Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) (holding that when petitioner fails to exhaust claims properly in state court and is barred from raising claims in state court by firmly established and regularly followed state procedural rules, these claims are procedurally defaulted).

This court may reach the merits of procedurally defaulted claims in two instances:

First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. Second, a federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice. A "fundamental miscarriage of justice" occurs

in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent.

*Henderson*, 353 F.3d at 892 (citations omitted); *see also Coleman*, 501 U.S. at 750.

**B.      Procedurally Defaulted Claims**

*1.      Prosecutorial Misconduct and Four[6] Instances of Prior Bad Acts Evidence*

During the direct appeal proceedings, the state court relied on adequate and independent state procedural grounds to deny review of Parrish's claims regarding prosecutorial misconduct and also to deny review of all but two of Parrish's claims regarding evidence of his prior bad acts. Parrish did not object at trial, as required by Alabama law, to four of the alleged evidentiary errors, and therefore the Court of Criminal Appeals refused to review them. Doc. 18-9 at 3–4 & 9 (citing, *inter alia*, *Ex parte Coulliette*, 857 So. 2d at 794). The state procedural rule requiring timely and proper preservation of issues for appeal was firmly established and regularly followed at the time it was applied to Parrish. *E.g.*, *Ex parte Malone*, 12 So. 3d 60, 66 (Ala. 2008) ("Because Malone did not raise before the trial court the issue of allowing a question to be asked after the parties had rested their cases, the trial court did not have an opportunity to correct its error, and Malone did not properly preserve the issue for appeal."); *Ex parte Coulliette*, 857 So. 2d at 794–95 ("The purpose of requiring a specific objection to preserve an issue for appellate review is to put the trial judge on notice of the alleged error, giving an opportunity to correct it before the case is submitted to the jury.") (quotation marks and citation omitted). For purposes of applying the adequate and independent state procedural ground, it does not matter that the Court of Appeals may have considered the merits in the alternative. *See Harris*, 489 U.S. at 264 n.10 ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding" when the adequate and

---

[6] Based on Parrish's reply, it appears he is challenging only three instances of prosecutorial misconduct, which occurred in the trial transcript at pages 128, 189–93, and 333–34. Doc. 20 at 3 (noting that "only three are caused by Mr. Gambril").

independent state ground "is a sufficient basis for the state court's judgment."). This court presumes that when Parrish sought further review the Alabama Supreme Court also rejected Parrish's claim based on his procedural default. *See Wilson*, 138 S. Ct. at 1192 (directing federal court to "look through" unexplained decision and presume it adopts the reasoning of the last related state-court decision); *Ylst*, 501 U.S. at 803 ("[W]here, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits."). Neither Parrish nor the respondents attempt to rebut this presumption. Consequently, Parrish's habeas claims based on four instances of improper admission of his prior bad acts and based on prosecutorial misconduct are procedurally defaulted pursuant to an adequate and independent state-court ground.

### 2.    *Two Remaining Instances of Prior Bad Acts Evidence*

For the remaining two claims of improper admission of evidence, which the Alabama Court of Criminal Appeals did address on direct appeal, Parrish raised these claims under state law only, not as federal claims. Federal habeas corpus relief does not lie for errors of state law, including the allegedly erroneous admission of evidence under state evidentiary rules. *Estelle v. McGuire*, 502 U. S. 62, 67 (1991). It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. *Id.* at 67–68. "If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Duncan*, 513 U.S. at 366. In his brief on direct appeal, Parrish argued the circuit court abused its discretion in refusing to grant a mistrial and "was a manifest abuse." Doc. 18-7 at 13. He did not refer to due process protected by the Fourteenth Amendment to the United States Constitution or any other federal right. The only federal case he referred to under his argument about admission of the

evidence was *Dunn v. United States*, 307 F.2d 883 (5th Cir. 1962), which he cited for the proposition that despite a curative instruction, once improper evidence is admitted "one cannot unring a bell." Doc. 18-7 at 15. *Dunn* was not a case about admission of prior bad acts evidence; it was about improper and prejudicial argument by a prosecutor. *Dunn*, 307 F.2d at 885–86. In arguing the curative instructions did not ameliorate the prejudice from the evidence, Parrish relied exclusively on Alabama authorities. Doc. 18-7 at 15–23. Parrish presented his claim in state court as one under state law, and that is how the state court addressed his claim. Doc. 18-9 at 7–9 (holding the court's instructions to the jury cured the prejudice, and the trial court did not error in denying motion for mistrial or motion for new trial); *cf. Duncan*, 513 U.S. at 366 ("The California Court of Appeal analyzed the evidentiary error by asking whether its prejudicial effect outweighed its probative value, not whether it was so inflammatory as to prevent a fair trial."). If the federal and state claims are virtually identical, Parrish does not say so, and it is not apparent from the state-court ruling. It is not the state court's duty to "read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Parrish therefore failed to present these federal claims to the state court. The time for him to do so has passed under regularly applied state procedural rules. *See Boyd v. Comm'r, Alabama Dep't of Corr.*, 697 F.3d 1320, 1335 (11th Cir. 2012) (holding claims barred under Ala. R. Crim. P. 32.2(a)(3) and (a)(5), requiring claims to be raised at trial and on appeal, were procedurally defaulted from federal habeas review). Consequently, Parrish procedurally defaulted his federal claim regarding admission of the evidence pursuant to an adequate and independent state-law ground.

### 3.      *Prosecutorial Misconduct Raised on Post-Conviction Appeal*

Parrish did not plainly assert the federal basis for his prosecutorial misconduct claim on appeal of his post-conviction action. The Court of Criminal Appeals held that Parrish failed to "plead the full factual basis for his claim" as required by Alabama Rules of Criminal Procedure 32.3 and 32.6(b). Doc. 18-15 at 9. Under Eleventh Circuit precedent, a ruling under Rule 32.6(b) is an adjudication "on the merits." *Borden v. Allen*, 646 F.3d 785, 812 (11th Cir. 2011). In his appellate brief on the issue, the only authorities Parrish identified were "*Smith v. State*," Alabama R. Crim. P. 8.4, "*Cotton v. State*, 481 So. 2d 413," and "*Gillespie v. State*, 549 So. 2d 640." Doc. 18-18 at 12–16. He did not rely on federal law in his appeal, and this court does not read a federal claim into those proceedings. *See Baldwin*, 541 U.S. at 32. Alabama Rule of Criminal Procedure 32.2(a) precludes Parrish from raising claims that were raised in previous collateral proceedings. Rule 32.2(b) precludes successive petitions. And Rule 32.2(c) sets a one-year deadline for most Rule 32 claims. *See* Ala. R. Crim. P. 32.2(a), (b) & (c). These independent and adequate state procedural grounds are firmly established and regularly followed by Alabama appellate courts. *See* Ala. R. Crim. P. 32.2(b) (precluding successive Rule 32 petitions); *Tucker v. State*, 956 So. 2d 1170, 1171–73 (Ala. Crim. App. 2006); *Horsley v. State*, 675 So. 2d 908, 909 (Ala. Crim. App. 1996); *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006). Consequently, Parrish's prosecutorial misconduct claim is procedurally defaulted.

### 4.      *Excuse for Procedural Default*

Parrish does not attempt to show that the default of any of his federal claims should be excused. Therefore, Parrish's claims regarding prosecutorial misconduct and improper admission of evidence cannot be reviewed. *See Henderson*, 353 F.3d at 892 (describing cause and prejudice standards); *see also Coleman*, 501 U.S. at 750.

14

**C.      Review on the Merits**

Parrish did preserve for review his federal claims regarding his trial counsel's ineffective assistance. For claims properly before a federal court, a writ of habeas corpus shall be granted only if the prior adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). A state-court decision is "contrary to" federal law under § 2254(d)(1) "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell*, 535 U.S. at 694. Under the "unreasonable application" standard, this court may grant a writ only if the state court identified the correct governing federal legal principle but applied that principle to the facts of a petitioner's case in an objectively unreasonable way. *See Williams v. Taylor*, 529 U.S. 362, 411–13 (2000) (O'Connor, J., delivering the opinion of the Court with respect to Part II). "Objectively unreasonable" means something more than an "erroneous" or "incorrect" application of clearly established law, and a reviewing federal court may not substitute its judgment for the state court's even if the federal court, in its own independent judgment, disagrees with the state court's decision. *See Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). The reviewing court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded

jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court recently reemphasized this deferential standard, noting that the state-court decision "must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citation omitted). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). As for the unreasonable determination of facts prong under § 2254(d)(2), the federal court "may not characterize these state-court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015) (citation omitted). If "[r]easonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's . . . determination." *Id*. (quotation marks and citations omitted). Factual issues made by a state court are presumed correct, and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The Supreme Court has recognized there is a question about the relationship between § 2254(d)(2)'s "unreasonable determination of the facts" standard and § 2254(e)(1)'s presumption, but it has "not yet defined the precise relationship between [them.]" *Brumfield*, 135 S. Ct. at 2282 (quotation marks and citation omitted). If a petitioner failed to develop the factual basis of a claim in state court, the federal court cannot hold an evidentiary hearing unless the petitioner shows that "the claim relies on . . . a new rule of constitutional law, made retroactive . . . ; or . . . a factual predicate that could not have been previously discovered through the exercise of due diligence; and . . . the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for

constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2). "Section 2254(e)(2) continues to have force where § 2254(d)(1) does not bar federal habeas relief." *Cullen*, 563 U.S. at 185.

Except for certain kinds of error that require automatic reversal, even when a state petitioner's federal rights are violated "relief is appropriate only if the prosecution cannot demonstrate harmlessness." *Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015); *see also Glebe v. Frost*, 135 S. Ct. 429, 430–31 (2014) ("Only the rare type of error—in general, one that infect[s] the entire trial process and necessarily render[s] [it] fundamentally unfair—requires automatic reversal.") (quotation marks omitted). "Harmlessness" in the context of section 2254 means "the federal court has grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *Davis*, 135 S. Ct. at 2197–98 (quotation marks omitted). These strict limitations reflect that habeas relief is granted sparingly, reserved for "extreme malfunctions in the state criminal justice systems" and "not as a means of error correction." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (quotation marks omitted).

Parrish's claims center on trial counsel's alleged ineffective assistance in failing to prevent the admission of evidence of Parrish's prior bad acts. To demonstrate a claim of ineffective assistance, a petitioner must show that, despite a strong presumption that counsel performed reasonably, counsel performed "below an objective standard of reasonableness," and that the petitioner was prejudiced by the deficiency. *See Strickland v. Washington*, 466 U.S. 668, 687–91, 694 (1984). Prejudice means "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "*Strickland* asks whether it is 'reasonably likely' the result would have been different. This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the

difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.' The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. 111–12 (citations omitted). In addition, this federal court's § 2254 review under *Strickland* is another step removed from the original analysis, or as the Supreme Court puts it, "doubly deferential." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (quotation marks and citation omitted); *Tharpe v. Warden*, 834 F.3d 1323, 1338 (11th Cir. 2016).

In his habeas petition and response to Respondents' answer, Parrish challenges some, but not all, of the incidents the circuit court reviewed in post-conviction proceedings. *Compare* Doc. 18-13 at 66–67, *with* Docs. 1 at 10–12 & 20 at 7–9.[7] The relevant rulings by the circuit court are as follows:

> 3. The victim in the case, A.W., answered one of then District Attorney Greg Gambril's questions by stating, "'Mama, you know why he went away that time.' She said, 'Yes. Why are you telling me this.' I said, 'Because he has done it again.' She said, 'To who.' I said, 'Me.'" R. 128. Mr. Baker [Parrish's counsel] did not object to the question or the answers.

> 4. Mr. Baker asked A.W. why she came forth when she did after the sexual abuse had allegedly been going on for years. R. 154. A.W. testified that she was "tired of the way he (the defendant) was treating her, her brother, and mother," and "He was abusing my little brother." R. 155. Mr. Baker did not object to the answers.

> 5. Mr. Baker asked A.W. about what happened to her little brother. A.W. answered that her brother had behavioral problems and that the defendant told her Mom that the only way to get him to stop was to beat him and whip him hard and that the defendant would grab him by the foot and hold him upside down and whip him hard. R. 158. Mr. Baker did not object.

> 6. A.W. testified that her mother had told her that the defendant had hit her brother in the nose and was afraid that he had broken it. R. 158–89. Mr. Baker did not object.

---

[7] Parrish initially stated he "left out a lot." Doc. 1 at 12. In his response, however, Parrish did not identify additional incidents not specified in his petition. Doc. 20. Consequently, this court considers Parrish's ineffective assistance claim only as it relates to the incidents he identifies.

7. Mr. Baker asked A.W. about what she told her mother when she told her about the abuse, to which she made the same statement as given previously about what he had done when he "went away." R. 161–62. Mr. Baker did not object.

8. Mr. Baker questioned A.W. about things that had happened, and she testified about a camping trip when the defendant got on top of her inside the tent. R. 176–77. Mr. Baker did not object.

Doc. 18-13 at 66–67. At the time of the trial, Parrish's counsel had been a criminal defense attorney for over 20 years and tried numerous rape and sexual abuse cases. Doc. 18-13 at 69. Counsel recognized that some attorneys object at every opportunity, but for strategic reasons he chose not to do so in this case. Doc. 18-13 at 69. Counsel explained that "excessive objections often highlight and emphasize the evidence being objected to and frequently irritates or annoys jurors and biases them against the objecting party. He added that excessive objections make it appear as though the objecting parting is trying to hide something." Doc. 18-13 at 69. The circuit court recognized that counsel obtained a ruling *in limine* not to mention the prior bad acts. Doc. 18-13 at 71–72. The circuit court, which observed counsel's performance at trial, ruled that when the statements came in "inadvertently," counsel made a strategic choice not to object and overemphasize the effect of the evidence. Doc. 18-13 at 72. Counsel did object when he thought the evidence became too damaging, and he moved for a mistrial, but the circuit court's rulings were beyond counsel's control. Doc. 18-13 at 73. The circuit court acknowledged that, under *Strickland*, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Doc. 18-13 at 73 (quoting *Strickland*, 466 U.S. at 690–91). It found Parrish failed to show counsel provided deficient performance. Doc. 18-13 at 74. The circuit court further found that Parrish failed to show he was prejudiced by counsel's performance. Doc. 18-13 at 74. The

court pointed out Parrish essentially admitted his guilt to four different people. Doc. 18-13 at 74. It held the "overwhelming evidence against" Parrish made it not "'reasonably likely' the outcome of the trial would have been different but for Mr. Baker's performance at trial." Doc. 18-13 at 75; *see also Harrington*, 562 U.S. at 111 ("*Strickland* asks whether it is 'reasonably likely' the result would have been different."). It found the verdict would not have been any different had counsel objected. Doc. 18-13 at 75. Consequently, it held Parrish was not prejudiced by counsel's performance. Doc. 18-13 at 75–76.

Parrish appealed. The last reasoned opinion, from the Court of Criminal Appeals, held that the circuit court's findings were "clearly supported by the record of the evidentiary hearing." Doc. 18-15 at 11. It held that the circuit reasonably found counsel to have "made a strategic choice not to overemphasize some instances of testimony of possible bad acts." Doc. 18-15 at 11.  It held that the circuit court did not abuse its discretion in determining that Parrish "failed to prove that counsel was ineffective." Doc. 18-15 at 11.

Here, applying the proper measure of deference to counsel's judgments and to the state court's rulings, this court finds that Parrish fails to show that the state court's denial of his ineffective assistance claim was an unreasonable application of *Strickland* or any other federal law as determined by the United States Supreme Court, and he fails to show that the decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d)(1); *Williams*, 529 U.S. at 404–05, 412–13. It was not professionally unreasonable for Parrish's trial counsel to make a strategic decision not to object when the jury heard certain instances of evidence of Parrish's prior bad acts. Parrish also demonstrates no prejudice resulting from his counsel's failure to object, particularly where he made repeated admissions of his culpability. There is no likelihood that the outcome of the trial would have been

different if counsel had objected to the evidence. Parrish therefore is not entitled to habeas relief on his claim of ineffective assistance of counsel.

Parrish asks for an evidentiary hearing. Doc. 20 at 10. No hearing is required because "the record refutes the applicant's factual allegations or otherwise precludes habeas relief." *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.").

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for habeas corpus relief filed by Petitioner Perry Demon Parrish be DENIED and DISMISSED with prejudice.

It is further ORDERED that on or before **December 28, 2018,** the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE on the 12th day of December, 2018.

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE